UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| LISA ANN CHRISPEN,<br><br>    Plaintiff,<br><br>V.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL ACTION NO. 7:16-132-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for partial summary judgment (DE 112) filed by the United States. For the following reasons, the Court will grant the motion and dismiss Counts II and III of the plaintiff's amended complaint.

**I. Background**

The plaintiff Lisa Ann Chrispen alleges that certain staff at Big Sandy Healthcare, Inc. d/b/a Physicians for Women ("Big Sandy") were negligent in their evaluation, management, diagnosis, treatment, and care of her uterine cancer. She further alleges that, as a result of the staff's negligence, she has suffered various damages including a substantially shortened life expectancy. (DE 80, Amended Complaint.)

Chrispen originally named Big Sandy and two doctors who practiced there – Dr. Joanna Santiesteban and Dr. Enrico Ascani – as defendants in this action, in addition to the United States. There is no dispute that Big Sandy and the doctors are deemed employees of the federal Public Health Service under 42 U.S.C. § 233(a).

The United States has certified that the doctors were acting within the scope of their employment during the events alleged in the indictment. Thus, Chrispen's exclusive remedy for the wrongs she has alleged is through an action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. Accordingly, the United States has been named the sole defendant in this action.

Chrispen asserts three claims against the United States. The first count is for medical negligence. The second and third counts both assert that Big Sandy was negligent in the hiring, supervision and/or retention of Dr. Santiesteban. (DE 80, Amended Complaint, Counts I, II, and II.) She seeks $10 million in damages. The United States has recently stipulated that Dr. Santiesteban breached the duty of care in her medical treatment of Chrispen.

The United States now moves to dismiss Chrispen's claim of negligent hiring/retention/supervision, arguing that the claim is precluded by the FTCA's discretionary-function exception.

## II. Analysis

Suits against the United States are generally barred unless it consents to be sued. *Kohl v. United States*, 699 F.3d 935, 939 (6th Cir.2012). The FTCA reflects a limited waiver of that immunity but there are multiple exceptions to it. *Id*. The exception at issue here is the "discretionary-function exception." Under it, the FTCA's waiver of immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If the exception applies to a claim, the United States has not waived its immunity for the claim.

2

Thus, "federal courts lack subject-matter jurisdiction, and the claim must be dismissed." *Kohl*, 699 F.3d at 940.

To determine whether Chrispen's negligent hiring/retention/supervision claim falls within the discretionary-function exception, the Court must employ a two-step test. *Id*. Under the first step, the Court must determine "whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Id*. (citing *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). If so, then the discretionary-function exception does not apply. *Id*. The United States has waived its immunity to such claims through the FTCA because the employee had no option except to adhere to the directive. *Id*. (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the employee failed to do so, the United States is subject to liability.

"If, on the other hand, there was room for judgment or choice in the decision made, then the challenged conduct was discretionary." *Id*. This means the conduct may be protected. The Court must then proceed to the second step of the test to determine whether the challenged conduct is the kind that the discretionary function was intended to shield from liability. *Id*. The discretionary-function exception was intended "'to prevent judicial 'second-guessing' of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

The Sixth Circuit "has consistently held that agency supervisory and hiring decisions fall within the discretionary function exception." *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) (citing cases). Absent a specific regulation that

3

constrains the government's judgment on such issues, decisions about training, supervision and retention "require policy judgments—the type that Congress intended to shield from tort liability." *Id*.

In her response, Crispin argues that her claim is specifically for "negligent credentialing." The parties appear to agree with the definition of credentialing contained in a document published by the Bureau of Primary Health Care dated July 10, 2002, which clarified the bureau's credentialing policy dated July 17, 2001. (DE 112-6, DE 112-7.) The parties refer to the 2002 document as Policy Information Notice (PIN) 2002-22 and the Court will do the same. PIN 2002-22 defines credentialing as "the process of assessing and confirming the qualifications of a licensed or certified health care practitioner." (DE 112-7, PIN 2002-22, § A.)

The first problem with Chrispen's negative credentialing claim is that the tort is not currently recognized under Kentucky law. *Brown v. Trover*, No. 2012-CA-001880-MR, 2016 WL 100311, at \*4 (Ky. Ct. App. Jan. 8, 2016). The United States' liability under an FTCA claim "is determined in accordance with the law of the state where the event giving rise to liability occurred." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir.1995). The Kentucky Court of Appeals "briefly recognized the tort" in *Estate of Judith Burton v. Trover*, 2009–CA–001595, 2011 WL 8318231, at \*1 (Ky.App.2011). *Brown*, 2016 WL 100311 at \*4. The Kentucky Supreme Court, however, overturned that decision on other grounds, leaving "for another day consideration of a negligent credentialing cause of action." *Brown*, 2016 WL 100311 at \*4 (quoting *Trover v. Estate of Burton*, 423 S.W.3d 165, 168 (Ky.2014)).

In *Brown*, the Kentucky Court of Appeals declined to recognize the tort. *Id*. at 4, 5. In doing so, the court noted that the "legal and policy-based considerations

4

involved are numerous, varied, and of interest and importance to contentious factions." *Id.* at 5. Further, there are multiple versions of the tort. *Id.* Noting the court's duty to "exercise great restraint in recognizing such new and complex causes of action," the Kentucky Court of Appeals thought it best to leave the decision about whether to recognize the tort to the Kentucky Supreme Court. *Id.* Thus, the court affirmed the trial court's dismissal of the plaintiff's negligent credentialing claim.

Later, in *Spalding v. Spring View Hosp., LLC*, No. 2013–CA–000842–MR, 2016 WL 929507 (Ky. App. Mar. 11, 2016), a divided panel of the Kentucky Court of Appeals again held that negligent credentialing was a viable cause of action in Kentucky. The Kentucky Supreme Court granted discretionary review of that decision on October 13, 2016 and the case remains pending. *See Dixon v. Lake Cumberland Reg'l Hosp., LLC*, No. 2014-CA-000917-MR, 2017 WL 1533812, at *10 (Ky. Ct. App. Apr. 28, 2017)

In cases brought under the FTCA, where state law is unsettled, the federal court must predict what the state's highest court would do if presented with the case. *See Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1298 (7th Cir. 1991.) The Court finds it unnecessary here to determine whether the Kentucky Supreme Court will ultimately recognize the tort of negligent credentialing. This is because, even if this Court were to determine that Kentucky's highest court will recognize the tort, Chrispen's claim must fail.

The Court was not certain after reading Chrispen's response brief precisely what rule or policy she claims Big Sandy violated with regard to the credentialing of Dr. Santiesteban. Accordingly, the Court notified the parties via-email that Chrispen should be prepared to address this issue at the recent teleconference in this matter.

In her response brief, Chrispen mentions two possible sets of policies. First, she mentions the BPHC policy discussed above, PIN 2001-22, which Chrispen refers to simply as "the Policy" in her response. (DE 116, Response at 3.) Next, she mentions "the Joint Commission Standards" and states that "the real question before the Court is whether the Big Sandy complied with" those standards. (DE 116, Response at 3.)

As to the "Joint Commission Standards," Chrispen mentions these standards multiple times in her response brief. (DE 116, Response at 3, 4, 12, 13, 14, 17, 20, 21, 23.) In fact, Chrispen charges Big Sandy with a "clear violation of the Joint Commission Standards." (DE 116, Response at 14.) Later in her response brief, Chrispen explains that the "Joint Commission" is the Joint Commission on Accreditation of Healthcare Organizations. (DE 116, Response at 16-17.) In her brief, however, Chrispen never sets forth exactly what the Joint Commission Standards are or which ones she claims Big Sandy violated. Nor did her counsel do so at the recent teleconference. Again, in order for this Court to find that the United States has waived immunity for Chrispen's claims against Big Sandy, she must point to a "mandatory regulation or policy that allowed no judgment or choice," which Big Sandy violated. *Kohl*, 699 F.3d at 940. Chrispen has failed to do so with regard to the Joint Commission Standards.

Further, Chrispen has failed to prove that Big Sandy was obligated to follow any Joint Commission Standards regarding the credentialing of Dr. Santiesteban. In her response brief and at the teleconference, Chrispen's counsel stated that PIN 2002-22 requires that Big Sandy comply with the Joint Commission Standards. (DE 116, Response at 3, 13, 21.) Chrispen does not point to any provision of PIN 2002-22 that mandates Big Sandy's compliance with the Joint Commission Standards.

6

Because Chrispen fails to prove that the Joint Commission Standards are mandatory for Big Sandy, the Court cannot find that the United States has waived immunity for any claim that Big Sandy violated those standards.

As to PIN 2002-22, in her response brief and at the teleconference, Chrispen asserted that Big Sandy violated the following provision, which addresses the credentialing of licensed independent practitioners:

> 1. Credentialing of LIPs requires primary source verification of the following:
>
> - Current licensure;
> - Relevant education, training, or experience;
> - Current competence; and
> - Health fitness, or the ability to perform the requested privileges, can be determined by a statement from the individual that is confirmed either by the director of a training program, chief of staff/services at a hospital where privileges exist, or a licensed physician designated by the organization.

(DE 112-7, PIN 2002-22, § B(1), p. 2.)

PIN 2002-22 defines "primary source verification" as "[v]erification by the original source of a specific credential to determine the accuracy of a qualification reported by an individual health care practitioner." (DE 112-7, PIN 2002-22, § A, p. 2.)

As evidence that Big Sandy complied with this requirement, both in its reply brief and in the teleconference, the United States cites the deposition testimony of Ancil Lewis, Big Sandy's Chief Executive Officer. (DE 112-5, Lewis Dep. at 17, 53.) Lewis testified that he established the credentialing committee at Big Sandy in 1999 or 2000 and that he was co-chair of the committee during the events at issue. (DE 112-5, Lewis Dep. at 20-22.)

The United States specifically cites page 115 of Lewis's deposition. (DE 122, Reply at 7.) There, Lewis states that Big Sandy obtained documentation that Dr. Santiesteban had a Kentucky medical license, had completed medical school and an obstetrics and gynecology (OB-GYN) residency, and that she was board certified in OB-GYN. (DE 112-5, Lewis Dep. at 115.) In the teleconference, Chrispen's counsel did not dispute that Big Sandy had primary source verification of Dr. Santiesteban's current license, relevant education, training, experience, or health fitness. Instead, Chrispen's counsel focused on whether Big Sandy had primary source verification of Dr. Santiesteban's "current competence."

Deciding which documents are necessary to determine Dr. Santiesteban's "current competence," however, is a discretionary decision. It may be clear what primary source documents are necessary to verify a doctor's current licensure, education, training, and experience. Deciding the documents necessary to verify a doctor's "current competence," however, requires some judgment and choice. Further, making such determinations in hiring or retaining an employee requires policy judgments, which are the kinds of judgments Congress intended to shield from tort liability. *Snyder*, 590 F. App'x at 510. Accordingly, the United States has not waived immunity for claims that Big Sandy violated PIN 2002-22 by failing to use the appropriate documents to verify Dr. Santiesteban's current competence.

The parties' arguments on this issue illustrate the judgment and discretion involved in deciding which documents evidence a physician's "current competence." The United States argues that, even if this were not a discretionary decision, it complied with PIN 2002-22's directive by contacting Dr. Santiesteban's physician references listed in her application for employment, each of whom completed and returned a form attesting to Dr. Santiesteban's ability to perform various types of

8

care and procedures "in a safe and medically appropriate manner." (DE 122, Reply at 7.) As evidence, the United States cites to portions of Dr. Santiesteban's credentialing file containing forms completed by Drs. Frederick Stehman, Grace Cha, and Elizabeth Case. (DE 112-8, Credentialing File at CM-ECF pp. 210-212.)

At the teleconference, Chrispen's counsel pointed out that none of these physicians had worked with Dr. Santiesteban in the five years leading up to her application. Chrispen's counsel argued that Big Sandy should have sought verifications of Dr. Santiesteban's current competence from her most recent employers. Chrispen points to no mandatory policy or regulation, however, requiring that Big Sandy contact Dr. Santiesteban's most recent employers to determine her current competence.

At the phone conference, Chrispen's counsel also argued that Big Sandy was aware Dr. Santiesteban was being investigated by the Virginia Board of Medical Licensure and that Big Sandy was obligated to inquire as to the status of the investigation. Again, however, Chrispen points to no mandatory policy or regulation requiring that Big Sandy do so. These are the kinds of policy judgments in hiring, supervising, and retaining employees that Congress intended to shield from tort liability. *Snyder*, 590 F. App'x at 510.

This opinion should not be interpreted to find that Big Sandy's actions in determining Dr. Santiesteban's current competence were adequate or appropriate. The Court expresses no opinion on that issue. With this opinion, the Court merely finds that the United States has not waived its immunity with regard to any claim based on those actions.

## III. Conclusion

Accordingly, the Court hereby ORDERS as follows:

1) the United States' motion for partial summary judgment (DE 112) is GRANTED; and

2) Counts II and III of the amended complaint are DISMISSED.

Dated July 13, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY